IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEBRA CHECA**<br>180 Dutch Road<br>Marlton, NJ 08053<br><br>*Plaintiff,*<br><br>vs.<br><br>**DREXEL UNIVERSITY**<br>3141 Chestnut Street<br>Philadelphia, PA 19104<br><br>-and-<br><br>**KATHY LALLY**<br>3141 Chestnut Street<br>Philadelphia, PA 19104<br><br>-and-<br><br>**CHRISTINA ZERVOUDAKIS**<br>3141 Chestnut Street<br>Philadelphia, PA 19104<br><br>*Defendants.* | NO. _____<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby files the following Complaint against Defendants:

## INTRODUCTION

1. Plaintiff initiates this action to seek redress against Defendants for unlawful disability discrimination in violation of the Americans with Disabilities Act ("ADA") and other applicable federal and state law.

## PARTIES

2. Plaintiff is Debra Checca ("Plaintiff"), an adult individual currently residing at the above address.

3. Defendant, Drexel University ("Defendant"), is a colleage that is believed and therefore averred to have been created and existing pursuant to the laws of the Commonwealth of Pennsylvania with a principal place of business at the above address.

4. Defendant Kathy Lally, is an employee of Defendant employed at the above-captioned address.

5. Defendant Christina Zervoudakis, is an employee of Defendant employed at the above-captioned address.

6. At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of his or her job duties.

7. Defendant is an "employer" within the meaning of the ADA because it is engaged in an industry affecting interstate commerce and because they maintained or maintains fifteen ("15") or more employees for each working day in each of twenty ("20") or more weeks in the current or preceding calendar year.

8. It is believed and therefore averred that Defendant is an "employer" within the meaning of the Family Medical and Leave Act ("FMLA") as it engages in commerce, or in any industry or activity affecting commerce, and has fifty ("50") or more employees for each working day in each of twenty ("20") or more weeks in the current or preceding calendar year.

9. Defendant also maintains a sufficient number of employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act (requiring four or more employees).

10. Defendant Lally is individually liable as a supervisor under the FMLA.

11. Defendants Lally and Zervoudakis are liable as aiders and abettors under the PHRA.

## JURISDICTION and VENUE

12. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

13. The Court may properly maintain personal jurisdiction over each Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

14. The United States District Court for the Eastern District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to

28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

15. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

16. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Eastern District of Pennsylvania at the time of the illegal actions set forth herein).

## PROCEDURAL and ADMINISTRATIVE REMEDIES

17. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

18. Plaintiff has satisfied the procedural and administrative requirements for proceeding with an employment discrimination action.

19. Plaintiff filed a timely written charge of discrimination with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging discrimination at No. 530-2015-01876 on or about January 27, 2015.

4

20. The instant action is timely because it is initiated at least ninety ("90") days after the issuance of a Right to Sue Letter by the EEOC which was mailed on or about October 14, 2015.

21. Plaintiff has exhausted her federal and state administrative remedies as to the allegations of the instant Complaint at the time of filing.

## FACTUAL BACKGROUND

22. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

23. Plaintiff was employed at Drexel University (College of Medicine) as Program Manager in the Department of Medicine, Division of Rheumatology.

24. Plaintiff had said position from February of 2013 until October 10, 2014 when, immediately on her return from disability leave, she was significantly retaliated against for the sole and malicious purpose of creating such a hostile environment that she was forced to resign her position.

25. During her tenure Plaintiff was a high achiever.

26. Unfortunately, Plaintiff had to go out on short-term disability due to carpal tunnel surgery on her left wrist on or about June 25, 2014.

27. Plaintiff returned to work on or about Tuesday, September 16, 2014.

28. Plaintiff's original return date was supposed to be August 5, 2014, but was extended by her surgeon to September 16, 2014 insofar as she required four weeks of hand therapy due to an inflamed and irritated suture.

29. Further, while Plaintiff was out, and seven days post-surgery, her mother became very sick.

30. As a consequence, Plaintiff was required to assist her husband and physically lift her mother out of bed.

31. Helping with her mother aggravated Plaintiff's sutures and interrupted the healing process.

32. Plaintiff's mother died on July 18, 2014.

33. On the day Plaintiff returned to work, at approximately 1:00 PM, Plaintiff entered Kathy Lally's office for a scheduled meeting.

34. Kathy Lally was a supervisor.

35. Christina Zervoudakis was also present at the meeting with Kathy Lally.

36. Plaintiff thought the meeting was to bring her up to date regarding events that had occurred while she was away.

37. Upon information and belief, Christina Zervoudakis had been paid money to do Plaintiff's job in her absence.

38. At the meeting above-referenced, Plaintiff was not greeted with any degree of courtesy or politeness.

39. No one asked how Plaintiff was doing or gave any condolences on the death of her mother.

40. Plaintiff asked to review what had been done while she was away and Ms. Zervoudakis started to ramble about all of the things that Plaintiff allegedly did not do.

41.     Ms. Lally then informed Plaintiff that the meeting was not about what was done while she was away-but rather what she allegedly did not do before she went out.

42.     The meeting was a clear premeditated and planned attack to destabilize and upset Plaintiff, which took fifteen ("15") to twenty ("20") minutes.

43.     Plaintiff stood up and told them that she just returned to work after being out two and a half months recovering from surgery and the loss of her mother.

44.     At that point, because of the continual harassment Plaintiff told them that she quit her job.

45.     Plaintiff then called Carolyn O'Connor M.D., her chief, upon returning to her desk and told her what happened.

46.     Dr. O'Connor told Plaintiff that she had done nothing wrong.

47.     In looking at the list of issues Plaintiff had supposedly neglected she found that they were in fact completed or if they were not completed at that time, it was because they could not be completed.

48.     Plaintiff reviewed the list with Kathleen McCloskey two days later and McClosky agreed with Plaintiff that the list was unfounded and ridiculous.

49.     Plaintiff learned further that there had been an assumption while she was out that she would not be returning to work or alternatively, that she would be returning to work only to resign immediately.

50.     In any event, Plaintiff also learned that the plan was for Ms. Zervoudakis to take over Plaintiff's position.

51. Plaintiff met with Dr. O'Connor on or about September 17, 2014, informing her that she did not have another job and was looking forward to returning to her position.

52. Plaintiff asked her to reconsider her resignation.

53. Plaintiff told Dr. O'Connor that she was confused and upset about what happened.

54. On or about Thursday, September 18, 2014 Bev Johnson, on behalf of the Department Head who is above Dr. O'Connor, informed Plaintiff that she could retract her forced resignation.

55. Plaintiff called Dr. O'Connor and told her that she was retracting the forced resignation.

56. Dr. O'Connor told Plaintiff she could not retract the resignation.

57. Plaintiff told Dr. O'Connor that Bev Johnson had said that she could and O'Connor told Plaintiff not to listen to her.

**COUNT I**
**Americans with Disabilities Act**
*Against Drexel University*

58. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

59. Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA because she has, or had at all times relevant hereto, a disability that

substantially limited/limits one or more major life activities, or because she had a record of such impairment.

60. Alternatively, as permitted by Fed.R.Civ.P. 8(d)(2), Plaintiff is a "qualified individual with a disability" as that term is defined in the ADA because she was regarded as and/or perceived by Defendant and its agents as having a physical impairment that substantially limited/limits one or more major life activities.

61. Defendant created a hostile-work environment for the Plaintiff.

62. Congress enacted the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553, which became effective January 1, 2009.

63. Congress intended the amendments to reinstate a broad scope of protection under the ADA.

64. The EEOC revised its regulations, construing the definition of disability broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. *See generally* 29 C.F.R. § 1630.2(j)(1)(i).

65. Plaintiff suffered an "adverse employment action" insofar as she was constructively discharged from her position with Defendant as a result of a hostile work environment.

66. After the 2008 amendments to the ADA, a plaintiff is simply required to demonstrate that she or she was subjected to an adverse action as a result of an actual or perceived physical or mental impairment to be "regarded as" disabled. Gaus v. Norfolk S. Ry. Co., 2011 U.S. Dist. LEXIS 111089 at *55 (W.D. Pa. Sep. 28, 2011).

9

67. A physical impairment means "Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine" or "Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. §1630.2(h)(1)-(2).

68. By way of example and without limitation, "chronic pain" coupled with prescription medication has been found to be a disability under the 2008 amendments referenced above. *See generally* Gaus v. Norfolk S. Ry. Co., 2011 U.S. Dist. LEXIS 111089 (W.D. Pa. Sep. 28, 2011).

69. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her disability or perceived disability.

70. The foregoing conduct by Defendant constitutes unlawful retaliation against Plaintiff insofar as she took medical leave.

71. As a result of Defendant's unlawful discrimination and retaliation, Plaintiff has suffered damages as set forth herein.

## COUNT II
### Pennsylvania Human Relations Act
### *Against All Defendants*

72. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

73. The foregoing disability discrimination and retaliation by each Defendant also violates the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*

74. As a result of each Defendant's violations of the Pennsylvania Human Relations Act, Plaintiff has suffered damages, as set forth herein.

## COUNT III
### FMLA Interference and/or Retaliation
### *Against Drexel University and Kathy Lally*

75. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

76. It is believed and therefore averred Plaintiff was an "eligible employee" within the meaning of the FMLA because she was:

   a. employed by Defendant for a period of at least twelve (12) months; and

   b. worked at least 1,250 hours in the twelve-month period immediately preceding the scheduled commencement of her FMLA leave.

77. Plaintiff was entitled to FMLA leave and protections associated thereto.

78. Defendants interfered with Plaintiff's FMLA rights and/or alternatively, as permitted by Fed.R.Civ.P. 8(d)(2), retaliated against Plaintiff for utilizing her FMLA rights or rights that would be otherwise qualified under the FMLA.

79. Specifically, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or *disciplinary* actions. 29 CFR 825.220(c).

80. As a result of Defendants' violations of the FMLA, Plaintiff has suffered damages, as set forth herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against each Defendant and that it enter an Order as follows:

  a. Defendant is to be permanently enjoined from discriminating or retaliating against Plaintiff on any basis prohibited under applicable federal and state law;

  b. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating or retaliating against employees based on any basis prohibited under applicable federal and state law and be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

  c. Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have

received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination at the hands of Defendant until the date of verdict;

d. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused to her by Defendant's actions as permitted by applicable law;

e. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or any other employees from engaging in such misconduct in the future;

f. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate including but not limited to reinstatement;

g. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

h. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

i. Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure Defendant does not engage – or ceases engaging - in illegal retaliation against Plaintiff or other witnesses to this action;

j. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

k. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of the Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KOLMAN ELY, P.C.**

*/s/ W. Charles Sipio*
Timothy M. Kolman, Esquire
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire ✓
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138
tkolman@kolmanlaw.net
wely@kolmanlaw.net
wcsipio@kolmanlaw.net

*Attorneys for Plaintiff*

Dated:      January 11, 2016